*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* X. R. MORENO, Minor.

UNPUBLISHED
December 3, 2019

No. 347481
Macomb Circuit Court
Family Division
LC No. 2016-000073-NA

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor child, XRM, under MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury), (b)(*ii*) (parent had opportunity and failed to prevent physical injury), (g) (parent fails to provide proper care and custody), (j) (reasonable likelihood that child will be harmed if returned to parent), and (k)(*iii*) (parent battered, tortured, or caused other severe physical abuse). On appeal, respondent argued that the trial court clearly erred when it did not consider all the best-interest factors in MCL 722.23 or the child's placement with a relative. We remanded to the trial court to explicitly address whether termination was proper in light of the child's relative placement.[1] The trial court heard additional testimony and concluded that termination of respondent's parental rights was in the child's best interest despite the relative placement. Following this remand, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent was involved with Mauricio Moreno-Lopez, the child's father,[2] but he was deported to Mexico after being convicted of a drug offense and was precluded from seeking re-

---

[1] *In Re Moreno*, unpublished order of the Court of Appeals, entered August 13, 2019 (Docket No. 347481).

[2] Petitioner also sought termination of the parental rights of the legal father, but prepared a parent-agency agreement and allowed him to participate in services in Mexico while the criminal

entry for 10 years. Respondent travelled to Mexico where the child was conceived, but she returned to Michigan where the child was born in May 2015. Respondent was the predominant caregiver for the child and did not cite any other party that could be responsible for injury to the child. She took the child to the doctor, expressing concern that the child had cloudy eyes and a possible infection. However, a medical examination revealed that the child's left leg was larger than the right, there was a lump in the child's lumbar spine region, and the child's forehead was bruised. Ultimately, during the course of the medical evaluation and criminal investigation, respondent gave various accounts for the child's injuries, such as the child falling on a hard surface or having a temper tantrum, which authorities rejected as the cause of the injuries.

This termination proceeding arose from respondent's physical abuse of XRM. A petition was filed asserting that termination of respondent's parental rights was warranted because the child sustained multiple nonaccidental injuries, including "a left tibia/fibula fracture, right radius fracture, depressed occipital fracture," bilateral subdural hematoma, and a possible right fibula fracture. Respondent pleaded no contest to the trial court's assumption of jurisdiction over the child, and to the statutory grounds for termination. However, a hearing regarding the child's best interests was delayed for nearly two years for genetic testing and resolution of the criminal proceeding. Genetic testing did not reveal the presence of fragile bone disease, doctors rejected an accidental cause of the child's injuries, and respondent was convicted of child abuse. The trial court determined that respondent's conviction of first-degree child abuse, MCL 750.136b(2), and her corresponding sentence of 18 months to 5 years' imprisonment, as well as the child's need for permanency, supported the conclusion that termination of respondent's parental rights was in the child's best interests.[3]

## II. BEST INTERESTS AND RELATIVE PLACEMENT

Respondent contends that the trial court clearly erred when it did not consider all the best-interests factors in MCL 722.23, or XRM's placement with her great aunt. We disagree.

After a trial court finds that a statutory basis for termination exists by clear and convincing evidence and that a preponderance of the evidence shows "that termination of

---

proceeding against respondent was delayed. However, his participation was deemed insufficient, and his rights were also terminated. He is not a party to this appeal.

[3] We observe that the notice of filing submitted by the court reporter indicated that there was no record made of four court hearings, and the video failed for the continued hearing held on October 26, 2018, addressing the child's best interests. The parties did not seek to settle the record, MCR 7.210(B)(2). On remand, the parties acknowledged the equipment failure and recalled the former caseworker to address the child's best interests despite the relative placement. Counsel for respondent represented that she chose not to testify. However, he apprised the court that respondent obtained her GED, completed parenting classes, and worked while in prison. Because respondent took advantage of all services to "better herself," she was released on parole. Counsel represented that currently respondent lived with a friend, returned to her prior employment, and still loved the child.

parental rights is in the best interests of a child, the court must terminate the respondent's parental rights to that child." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "The trial court's decision on the best interests question is reviewed for clear error." *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004). A trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Respondent argues that the trial court clearly erred when it did not consider each of the best-interest factors in MCL 722.23, delineating the best-interest factors for the Child Custody Act, MCL 722.21 *et seq*. We declined to impose a requirement that a trial court apply each of the best-interest factors from the Child Custody Act to a termination proceeding because it "would not be sensible or indeed even possible." *In re JS & SM*, 231 Mich App 92, 100; 585 NW2d 326 (1998), overruled on other grounds by *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000). Indeed, the specificity of certain child custody factors rendered them irrelevant to a termination proceeding:

> For example, factor j, MCL 722.23(j) . . . provides that a factor to be considered in a child custody dispute is "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." This factor is obviously relevant in a dispute between two fit parents over which of the two will have physical custody of their child or children and which parent will have visitation rights. However, this factor is simply inapplicable in the context of a termination of parental rights where the difficult, but substantially different, question is whether the court should end the parental rights of a parent to a child. [*Id*. at 100-101.]

The determination of whether termination is in a child's best interests is based upon the whole record. *In re Trejo*, 462 Mich at 353-354. Therefore, the trial court did not clearly err when it did not consider all of the factors in MCL 722.23.

To the extent that respondent's argument implies that there was not a preponderance of the evidence to show that termination was in XRM's best interests, we disagree. Respondent asserts that she never showed any further indications of abuse toward the child, was consistent with visiting the child and the two bonded during the visits, obtained employment, and worked toward her GED while in prison. However, the trial court determined that termination was in the child's best interests on the basis of respondent's first-degree child abuse conviction and the

child's need for permanency. Respondent's first-degree child abuse conviction arose from severe injuries the child sustained, including a comminuted fracture of the distal left tibia, a transverse fracture of the distal left fibula, a buckle fracture of the distal right radius, and a fractured skull. Medical professionals determined that the child's injuries were nonaccidental, although respondent maintained that the injuries were accidental. There is no doubt that it is in a child's best interests to live in an environment free from severe physical abuse. Moreover, the child's need for permanency weighs in favor of termination because the child was in care for over three years when respondent was released from prison, and there was no indication that the child could be safely returned to her care within a reasonable time. Therefore, the trial court's best-interest determination was supported by a preponderance of the evidence.

Respondent also argues that the trial court clearly erred because it failed to consider XRM's placement with her great aunt in its best-interest determination. "[B]ecause 'a child's placement with relatives weighs against termination under MCL 712A.19a[(8)](a)[4],' the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

The child was placed with her maternal great aunt. A great aunt is included in the definition of a "relative". MCL 712A.13a(1)(j). On remand, the former caseworker testified that the maternal great-aunt expressed a preference for providing permanency for the child rather than pursuing a guardianship. In anticipation of the hearing on remand, the great aunt reiterated her request to provide permanence and pursue adoption. Additionally, no other family member offered to plan for the child through a guardianship. Further, in light of the child's young age of four, petitioner preferred not to have a guardianship that would last ten or more years. The trial court expressly addressed the child's placement with her great aunt, but noted the relative placement preferred to provide permanently for the child as opposed to a guardianship. We cannot conclude that the trial court clearly erred in holding that termination was in the child's best interests. *In re Olive/Metts*, 297 Mich App at 44.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford

---

[4] MCL 712A.19a(6)(a) was amended by 2012 PA 115, effective May 1, 2012. The amendment did not alter any of the statutory language of MCL 712A.19a(6)(a), but moved it to MCL 712A.19a(8)(a).